## Commonwealth v. Krause Trucking Inc.

162

C.P. of Columbia County, no. 246 of 2002.

*Richard Knecht*, for the Commonwealth.
*Don Bailey*, for defendant.

JAMES, *J.*, September 18, 2002—This summary criminal case is before this court from an appeal from the district justice court. Defendant is charged with "transporting foodstuffs in vehicles used to transport waste" in violation of 75 Pa.C.S. §4909(a)(1), which states:

"A person commits a violation of this section if he transports or knowingly provides a vehicle for the transportation of any food products or produce intended for human consumption in a vehicle which has been used to transport any municipal, residual or hazardous waste or any chemical or liquid, in bulk, which is not a food product or produce."

The facts of this case are as follows. On January 14, 2002, at a legally established weigh station in Mifflin Township, a Pennsylvania Department of Transportation employee stopped a tractor-trailer rig owned by defendant and driven by John Bowser, who "did work for" defendant. PennDOT found the truck to be overweight and cited the driver. The PennDOT employee also determined from the driver that he was hauling a tractor full of red wheat number two to a local mill for cleaning processing into flour for the commercial baking industry, *i.e.*, for human consumption. (There would also be a by-product that is not for human consumption.)

The truck driver and his records revealed that on the day before, at defendant's instructions, the driver had loaded demolition material into the trailer in the Bronx,

New York, and delivered it to an Ohio landfill. The demolition material consisted of "sheetrock, rock, dirt, carpet, plastic, paper, wiring, pipes," and similar material. On January 12, 2002, the day after delivering the demolition material to the Ohio landfill, at defendant's request the driver drove to Deerfield, Ohio, where the trailer was loaded with the red wheat number two. The driver then drove to Pennsylvania where he was stopped on the way to the processing mill.

Based on these additional facts, defendant was cited for a violation of "transporting" under 75 Pa.C.S. §4909(a)(1). In addition, PennDOT, in conjunction with the Pennsylvania Department of Environmental Protection, dumped the red wheat number two in a landfill and impounded defendant's tractor-trailer rig.[1]

The issue is whether the Commonwealth proved beyond a reasonable doubt that defendant transported any food product or produce intended for human consumption in a vehicle which has been used to transport any municipal, residual or hazardous waste or any chemical or liquid, in bulk, which is not a food product or produce.

Defendant is charged with *"transporting"* the red wheat number two. There is no culpability element required in defendant's actions. Defendant's actions need not be intentional, reckless, knowing, or negligent. Ignorance of this crime is not a defense. As written, the statute is a strict liability crime.

In Pennsylvania, penal statutes "shall be strictly construed." 1 Pa.C.S. §1928. They are to be strictly con-

---

1. The load was dumped and the truck was impounded and continues to be impounded without a court order or any due process review.

strued in favor of the accused. *Commonwealth v. Darush,* 256 Pa. Super. 344, 348, 389 A.2d 1156, 1158 (1978), citing *Commonwealth v. Cunningham,* 248 Pa. Super. 219, 375 A.2d 66 (1977). See also, *Commonwealth v. Driscoll,* 485 Pa. 99, 107, 401 A.2d 312, 319 (1979).

Since the case at bar is a criminal strict liability case, interpretation requires even greater scrutiny. The law is loathe to impose criminal liability upon persons when they have no stated criminal intent or mens rea, particularly when the penalty is great and their property is subject to forfeiture to the state. Thus, when a statute imposes strict liability, "due process requires that the proscribed conduct and range of penalties be unambiguously identified." *Commonwealth v. CSX Transportation Inc.,* 653 A.2d 1327, 1331 n.6 (Pa. Commw. 1995), citing *Commonwealth v. Parker White Metal Company,* 512 Pa. 74, 91, 515 A.2d 1358, 1367 (1986). 75 Pa.C.S. §4909 authorizes forfeiture, and "[s]tatutes authorizing forfeiture are to be strictly construed." *Commonwealth v. Smith,* 562 Pa. 609, 615, 757 A.2d 354, 358 (2000), citing *Commonwealth v. $2,523.48 U.S. Currency,* 538 Pa. 551, 556-57, 649 A.2d 658, 660-61 (1994). As a result, analysis of this case requires that the language be strictly construed and that any ambiguities be resolved in favor of the defendant.

The facts of this case are simple. There is no question that defendant had transported municipal and/or residual waste[2] in the trailer the day before transporting the red

---

2. "Municipal waste" and "residual waste" are defined in the "Solid Waste Management Act" at 35 P.S. §6018.103 and also in the "Municipal Waste Planning, Recycling and Waste Reduction Act" at 53 P.S. §4000.103.

wheat number two. However, there is a question as to whether raw, unprocessed red wheat number two is "any food product or produce *intended for human consumption.*" "Food product or produce" is defined by the statute as "[a]ny raw, cooked or processed edible substance, beverage or ingredient used or intended for use or for sale, in whole or in part, for human consumption." 75 Pa.C.S. §4909(g).

The pivotal factual issue is whether unprocessed raw red wheat is a "food product or produce" as defined in the statute. It is certainly "raw." But the Commonwealth presented no evidence that this red wheat was a "substance" or "ingredient" that was "edible." This was raw, unprocessed material that had to be cleaned, tempered,

---

" 'Municipal waste.' Any garbage, refuse, industrial lunchroom or office waste and other material including solid, liquid, semisolid or contained gaseous material resulting from operation of residential, municipal, commercial or institutional establishments and from community activities and any sludge not meeting the definition of residual or hazardous waste hereunder from a municipal, commercial or institutional water supply treatment plant, waste water treatment plant, or air pollution control facility." 35 P.S. §6018.103.

" 'Residual waste.' Any garbage, refuse, other discarded material or other waste including solid, liquid, semisolid, or contained gaseous materials resulting from industrial, mining and agricultural operations and any sludge from an industrial, mining or agricultural water supply treatment facility, waste water treatment facility or air pollution facility, provided that it is not hazardous. The term 'residual waste' shall not include coal refuse as defined in the 'Coal Refuse Disposal Control Act.' 'Residual waste' shall not include treatment sludge from coal mine drainage treatment plants, disposal of which is being carried on pursuant to and in compliance with a valid permit issued pursuant to 'The Clear Streams Act.' " 35 P.S. §6018.103.

"Municipal waste" and "residual waste" are essentially defined in the same manner in the "Municipal Waste Planning, Recycling and Waste Reduction Act" at 53 P.S. §4000.103.

and ground before it could be an ingredient that could be used for human consumption. There is a "fundamental rule of law which holds that the Commonwealth has the never shifting burden of proving all elements of the charged offense." *Commonwealth v. Darush, supra,* 256 Pa. at 349, 389 A.2d at 1158. (citations omitted) In this case the Commonwealth has not proved beyond a reasonable doubt that the raw unprocessed red wheat number two was a "food product or produce" as defined by the statute.

Although this analysis of the facts and the statute may be considered technical by some, when strict liability is the standard and severe penalties are imposed, the statute must be strictly interpreted. This is particularly true with this statute which has been so artlessly drafted, with application and consequences that surely the legislators did not intend. Consider the following scenario. A person may remodel a room in his house and haul the residual waste consisting of old sheetrock or plaster, wire, pipes, glass, and carpet to the local refuse transfer station in his new pickup truck. On the way home, the person stops at a roadside market and picks up numerous baskets of tomatoes to can and takes them home in the truck. Under this statute, that person would be strictly liable, *i.e.,* guilty, and subject to a $10,000 fine and mandatory forfeiture of the new truck. This result is surely not the intent of the law, although it is the effect.

Although it is not necessary to go further in the analysis of this case, this court would be remiss if it did not address constitutional issues which appear to be flaws in this statute. In addition to the fines imposed for a violation of this statute, 75 Pa.C.S. §4909(c) provides for forfeiture of the vehicle:

"Any vehicle or conveyance used in the commission of an offense under this section shall be deemed contraband and forfeited to the Department of Environmental Resources. The provisions of law relating to the seizure, summary and judicial forfeiture and condemnation of intoxicating liquor shall apply to seizures and forfeitures under this section. Proceeds from the sale of forfeited vehicles or conveyances shall be deposited in the Solid Waste Abatement Fund."

This section directs that the forfeiture process must be in accord with due process hearing requirements under the Liquor Code (47 P.S. §6-602). The Liquor Code authorizes vehicle forfeitures where they are used to violate the liquor laws.

However, there is a significant contradiction within the forfeiture scheme of 75 Pa.C.S. §4909(c), which on its face provides for *mandatory* forfeiture of the vehicle. Yet, the Liquor Code procedure gives the court *discretion,* considering all of the circumstances, as to whether the vehicle should be forfeited. "[T]he court may, *in its discretion,* adjudge same forfeited and condemned as hereinafter provided." 47 P.S. §6-602(e). (emphasis added) A court may exercise its discretion in determining whether a vehicle transporting untaxed liquor should be forfeited and condemned. *Commonwealth v. One 1957 Chevrolet Sedan,* 191 Pa. Super. 179, 182-83, 155 A.2d 438, 440 (1959).

"Although there is a strong presumption of constitutionality of all lawfully enacted legislation, a statute or a provision of a statute will be found unconstitutional when the statute in question clearly violates the constitution." *Reeves v. Pennsylvania Game Commission,* 136 Pa.

Commw. 667, 679, 584 A.2d 1062, 1068 (1990). (footnote omitted) This inconsistency in the forfeiture procedure under 75 Pa.C.S. §4909(c) appears unconstitutional since it establishes a contradictory procedure and, thus, fails to afford defendant due process under the United States Constitution.

In addition, this court is concerned that the forfeiture procedure in this statue is unconstitutional because it mandates forfeiture of the vehicle, regardless of the value of the vehicle and the attendant circumstances of each individual case. Forfeiture may be considered monetary punishment and, as such, subject to the limitations of the excessive fines clause of the Eighth Amendment of the United States Constitution. See *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801 (1993), which discusses the Eighth Amendment, the excessive fines clause, and forfeitures in detail. Although the value of the vehicle in the present case is not part of the record, the tractor-trailer rig's value appears to be significant. Forfeiture of such a vehicle, particularly in a strict liability case, could be excessive and violative of the Eighth Amendment.

Although this court has made observations concerning the constitutionality of this statute, it is not necessary to rule on the statute's constitutionality. A court will not pass on a constitutional question unless absolutely necessary in order to decide the case before it, *Krenzelak v. Krenzelak,* 503 Pa. 373, 379, 469 A.2d 987, 990 (1983), and unless the determination is essential to a disposition of the case. *Altieri v. Allentown Officers' & Employees' Retirement Board,* 368 Pa. 176, 180, 81 A.2d 884, 886 (1951). The courts will not reach constitutional issues where the matter can be decided on nonconstitutional

grounds. *P.J.S. v. Pennsylvania State Ethics Commission,* 555 Pa. 149, 153, 723 A.2d 174, 176 (1999). This court has found that the Commonwealth has not proved its case beyond a reasonable doubt. Therefore, it is not necessary to address the constitutional concerns.

However, this court calls upon the legislature to redraft this legislation which addresses an important problem. Clearly, food should not be transported in contaminated vehicles such as garbage trucks. The present legislation appears to have been hastily drafted without regard to clarity, details, and fairness. The United States Supreme Court has eloquently spoken about the importance of clarity vis-à-vis due process:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the un-

lawful zone than if those boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99 (1972). (citations and specific quoted acknowledgements omitted)

The Pennsylvania Superior Court has given guidance regarding strict construction of penal statutes:

"All penal provisions should be strictly construed, and . . . where an ambiguity exists in the language employed by the legislature in a penal statute, it should be interpreted in a light most favorable to the criminally accused. While strict construction of penal statutes is required, however, courts are not required to give words of a criminal statute their narrowest meaning or disregard evident legislative intent. Indeed, it is a clear principle of our jurisprudence that where a statute is unclear on its face, resort must be taken to the intent of the General Assembly in enacting the provision, paying heed to such matters as the occasion and necessity for the statute, the circumstances underlying its enactment, the mischief to be remedied, and the object to be obtained. Moreover, the legislature is presumed, in drafting that statute, not to have intended a result which is absurd." *Commonwealth v. Kinney*, 777 A.2d 492, 494 (Pa. Super. 2001), citing *Commonwealth v. A.W. Robl Transport*, 747 A.2d 400, 403 (Pa. Super. 2000). This court submits that if an enacted statute is ambiguous, contradictory, and constitutionally infirm, the legislature has an obligation to redraft the statute to assure that its meaning is clear, its goal is achieved, and its result is fair and just.

Any legislation addressing "transporting foodstuffs in vehicles" should contain more specific definitions of the

targeted violators so that the average innocent citizen does not get caught in the legal web. There must be more details concerning the "foodstuffs" covered by the law, the manner in which they must be transported, and the cleanliness of the vehicles. For example, a washed and disinfected vehicle used to transport construction material may be more suitable to carry food products than a truck that always carries food products but is never cleaned and contains rotted food remnants.

Additionally, any statute should contain clear culpability requirements and reasonable forfeiture requirements, which confer discretion upon the courts so that the penalty fits the crime and the facts, and so that injustices can be avoided.[3] In society's rush to impose mandatory sentences and punishment, injustices are numerous and the average person is often the victim of the inequities, while the more severe violators, who deserve severe punishment, avoid detection.

Based on the facts of this case, the court issues the following verdict:

## VERDICT

And now, September 18, 2002, the court finds the defendant not guilty of violating 75 Pa.C.S. §4909 (a)(1).

---

3. The forfeiture procedure under the Liquor Code appears to be precisely such a procedure.